UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Tiffini Woodward,** | * | |
| **individually and on behalf of her minor child LW** | * | |
| | * | **CIVIL ACTION NO.** |
| Plaintiffs, | * | |
| | * | **JUDGE** |
| vs. | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | |
| **Sheriff Joseph P. Lopinto, III; Sheriff Newell** | * | |
| **Normand; Jefferson Parish Sheriff's Office;** | * | |
| **Vonzelle Gabriel; Griselda Jones;** | * | |
| **Michelle Becnel; Margaret Armant** | * | |
| **Correct Health Jefferson, L.L.C.** | * | |
| **Ironshore Specialty Insurance Co.** | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Tiffini Woodward, individually and on behalf of her minor child LW, residents of Louisiana, allege as follows:

**PRELIMINARY STATEMENT**

This is a civil rights action under 42 U.S.C. § 1983 and Louisiana law involving the failure to treat or help a young woman when she went into labor and gave birth to her first child in the toilet in her prison cell at the Jefferson Parish Correctional Center ("JPCC"). During her brief incarceration at JPCC, Defendants subjected Plaintiff to deplorable conditions and lack of adequate medical care. Despite knowledge of her pregnancy and pain and, with it, the risk of serious injury to her and her child, Defendants were deliberately indifferent toward Plaintiffs' medical needs and wholly negligent in their treatment of Plaintiff during her childbirth.

1

## PLAINTIFFS

2. Plaintiff Tiffini Woodward is a person of the full age of majority and, at all relevant times, was a resident of Jefferson Parish, Louisiana.

3. Plaintiff LW is a minor and, at all relevant times, is a resident of Jefferson Parish, Louisiana.

## DEFENDANTS

4. At all relevant times, Defendant Sheriff Joseph P. Lopinto, III was a person of the full age of majority, was a resident of Jefferson Parish, Louisiana, and was acting under color of state law in his capacity as the Sheriff of Jefferson Parish. He is and was responsible for the hiring, training, supervision, discipline and control of the deputies under his command as well as the supervision, administration, policies, practices, customs and operations of the Jefferson Parish Sheriff's Office. He is responsible, through its officers, employees, servants and agents, for enforcing the regulations and standards of conduct for the Jefferson Parish Sheriff's Office and for ensuring that its officers, employees, servants and agents obey the laws of the State of Louisiana and the United States. Defendant Lopinto is being sued in his individual and official capacities as he is directly and vicariously liable for the actions complained herein.

5. At all relevant times, Defendant Sheriff Newell Normand was a person of the full age of majority, was a resident of Jefferson Parish, Louisiana, and was acting under color of state law in his capacity as the Sheriff of Jefferson Parish. He is and was responsible for the hiring, training, supervision, discipline and control of the deputies under his command as

      well as the supervision, administration, policies, practices, customs and operations of the Jefferson Parish Sheriff's Office. He is responsible, through its officers, employees, servants and agents, for enforcing the regulations and standards of conduct for the Jefferson Parish Sheriff's Office and for ensuring that its officers, employees, servants and agents obey the laws of the State of Louisiana and the United States. Defendant Normand is being sued in his individual and official capacities as he is directly and vicariously liable for the actions complained herein.

6. Defendant Jefferson Parish Sheriff's Office is a political subdivision of the State of Louisiana and a municipal corporation. Defendant JPSO is directly liable for the acts complained herein due to its policies and practices and its grossly negligent hiring, training and supervision of the defendant police officer. Defendant JPSO is also vicariously liable for the acts complained of herein. Only declaratory and injunctive relief is sought as to this Defendant to ensure that JPSO adopts policies, practices, and procedures to adequately care for pregnant inmates.

7. Defendant Vonzelle Gabriel is a person of the full age of majority who, upon information and belief, is a resident of Louisiana.

8. Defendant Griselda Jones is a person of the full age of majority who, upon information and belief, is a resident of Louisiana.

9. Defendant Michelle Becnel is a person of the full age of majority who, upon information and belief, is a resident of Louisiana.

10. Defendant Margaret Armant is a person of the full age of majority who, upon information and belief, is a resident of Louisiana.

11. At all relevant times, Defendant Correct Health Jefferson, L.L.C., is a Louisiana limited liability company with its principle place of business in this District and contracts with JPSO to perform services on its behalf at the Prison. At all material times, Correct Health is both a private and public actor.

12. At all relevant times, upon information and belief, Ironshore Specialty Insurance Co. is an insurer practicing in this State providing coverage for Defendant Correct Health for the misconduct complained herein.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

14. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391.

## FACTS

15. On May 22, 2017, Plaintiff was arrested and taken to the Jefferson Parish Correctional Center for a parole violation.

16. At the time of arrest, Plaintiff was approximately 34 weeks (or about 8 months) pregnant.

17. At the time of arrest, Defendants knew Plaintiff was 8 months pregnant.

18. At least one time according to Correct Health Records, under "currently pregnant" a Correct Health Employee listed "unsure."

19. After processing, Plaintiff was admitted to the Infirmary unit at JPCC.

20. On May 23, 2017, Plaintiff complained of headaches, stomach aches, and vaginal bleeding and was transferred from JPCC to Tulane Medical Center for treatment.

21. Tulane treated Plaintiff from May 23, 2017 to May 25, 2017, for opioid withdrawal and dependency. Tulane prescribed and administered Suboxone, a variation of Subutex.

22. Tulane released Plaintiff back to JPCC on May 25, 2017.

23. Upon information and belief, Tulane instructed JPCC to continue Plaintiff's Suboxone treatment. However, Plaintiff did not receive Suboxone upon her return to JPCC.

24. Early on May 25, 2017, Plaintiff was escorted to cell No. 3.

25. Cell No.3 does not have bars; that is, all four sides of the cell are metal walls, including the door. There is a slot at the bottom of the door for security to pass a food tray to the Plaintiff. There is a peephole in the door. Plaintiff could not see through it because there was a piece of paper covering the peephole on the outside of the door. When security want to look into the cell, the lift the piece of paper. Consequently, Mr. Woodward could not see outside the cell.

26. Plaintiff complained to JPCC staff of vaginal bleeding. At this time Plaintiff was given a sanitary pad to show the staff that she was bleeding. When she showed the staff the second pad she was told that it was "old blood" and that nothing was wrong.

27. Plaintiff wasn't examined until approximately 6–7 hours after complaining of bleeding. JPCC records state: "8 months pregnant female resting at the time in bed-has not shown this nurse any s/s of pre-labor conditions. C/o of lower hurting to vaginal area. Saw no s/s of discharge, bleeding or mucus plug. Request arrestee to wear a sanitary pad, to keep abreast on ay s/s of."

28. There are no medical entries that note any activity for the overwhelming majority of the time she was in prison.

29. Plaintiff was never examined by a doctor.

30. At least every 20 minutes for more than twelve hours, Plaintiff cried out in pain and begged for help. Plaintiff repeatedly banged on the cell door, complaining of vaginal bleeding and stomach pains. The pain caused her to scream in anguish.

31. At one point she told the nurse that "she really felt bad" and the nurse replied, "Shut the f*** up. Go back to your corner." Based on no examination, the JPCC employee also told her that she was having Braxton Hicks contractions. When someone eventually came to check on her, she told the staff that she was in labor. She felt the baby's head, and "she felt that she had to poop."

32. Plaintiff was in labor, alone in her cell, for approximately 12 hours.

33. At no time during her period of labor did Defendants conduct a physical exam of Plaintiff, check her vital signs, or have a doctor examine her.

34. At all material times, Defendants Gabriel, Jones, and Becnel were present when Plaintiff was in labor and deliberately ignored, verbally abused, and/or disregarded her pleas for help and yells of anguish.

35. Plaintiff gave birth to Plaintiff LM on the toilet in her cell on May 26, 2017 at 34 weeks gestation. She was alone.

36. After the baby was born, laying face up in the toilet, it did not make a sound for fifteen minutes. Plaintiff was screaming that her baby was dead. About a half hour after the birth, JPCC staff finally entered the cell and removed the baby from the toilet and wrapped him in a jacket. This was Plaintiff's first child and first time in labor. Plaintiff was 22 years old at the time.

37. Plaintiff and LM were then transferred to Ochsner Medical Center where she finally delivered the placenta. Plaintiff remained there until May 29 and was transferred back to JPCC. LM remained at Ochsner until June 9th.

38. While at Ochsner, on the same day of delivery, Plaintiff suffered two seizures.

39. Defendants have exhibited a pattern and practice of deliberate indifference to pregnant inmates. Upon information and belief, on or around September 15, 2014, Defendants failed to respond and/or willfully ignored the pleas of another pregnant inmate who miscarried the fetus into her hands in the same prison, in the same section of the prison, and with similar consequences.

## COUNT ONE

### 42 U.S.C. § 1983 – Violation of Fourteenth And Eighth Amendment Rights – All Defendants

40. All previous paragraphs are incorporated herein by reference as if set forth fully here.

41. Defendants Lopinto, JPSO, Gabriel, Jones, Becnel, and Correct Health were grossly negligent, reckless, and deliberately indifferent in managing, training, and supervising their subordinates, and medical personnel that interacted with Plaintiffs.

42. Defendants Lopinto and Jefferson Parish Sherriff's Office's supervision of Defendant JPCC deputies and medical personnel was a material cause of Plaintiff's injuries.

43. Defendants Lopinto and Jefferson Parish Sherriff's Office's oversight of the procedures and conditions at JPCC was a material cause of Plaintiff's injuries.

44. The injuries caused by Defendants' conscious and voluntary acts were serious and resulted in lasting damage. As a result of Defendants' conduct, Plaintiffs suffered, and continue to suffer, physical damage, as well as emotional and mental pain and suffering.

45. Defendants acted under pretense and color of state law in their individual capacities and within the scope of their respective employment. Defendants' actions were beyond the scope of their jurisdiction, authority, and power, and were done willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendment of the United States Constitution.

## COUNT TWO

### Negligence – All Defendants

46. All previous paragraphs are incorporated herein by reference as if set forth fully here.

47. Defendants' conduct constitutes negligence against Plaintiffs under Louisiana state law.

48. Defendants injured Plaintiffs, as described above, with total disregard for their well-being, and their conduct constituted a gross deviation below the standard of care expected of a reasonable person in the same situation.

49. As a consequence of the injuries inflicted by Defendants, Plaintiffs have endured, and will continue to endure, physical, emotional, and mental pain and suffering.

50. Defendants Sheriff Lopinto, JPSO, and JJPCC's practices, procedures, and policies were a proximate cause of the negligence.

51. Defendants Sheriff Lopinto and Jefferson Parish Sheriff's Office's supervision of the JPCC personnel was a proximate cause of the negligence.

52. Defendants Gabriel, Jones, and Becnel's actions and inaction were a proximate cause of the negligence.

## COUNT THREE

### Intentional Infliction of Emotional Distress – All Defendants

53. All previous paragraphs are incorporated herein by reference as if set forth fully here.

54. Defendants Sheriff Newell Lopinto, Jefferson Parish Sheriff's Office, and Jefferson Parish Correctional Center's practices, procedures, and policies were a proximate cause of the intentional infliction of emotional distress.

55. Defendants Sheriff Newell Lopinto and Jefferson Parish Sheriff's Office's supervision of the JPCC personnel and Correct Health staff was a proximate cause of the intentional infliction of emotional distress.

56. Defendants Gabriel, Jones, and Becnel's actions and inaction were intentional and caused emotional distress to Plaintiff and LW.

## COUNT FOUR

### Negligent Infliction of Emotional Distress – All Defendants

57. All previous paragraphs are incorporated herein by reference as if set forth fully here.

58. Based on the foregoing, Defendants are liable to Plaintiffs for the negligent infliction of emotional distress.

## COUNT FIVE

### 42 U.S.C. § 1983 – Violation of Fourteenth Amendment Rights –
### Defendants Lopinto, Normand, JPSO, Gabriel, Jones, Becnel, Armant, and Correct Health for Failure to Provide Adequate Medical Care

59. All previous paragraphs are incorporated herein by reference as if set forth fully here.

60. Through the conduct described above, Defendants acting under color of state law, unlawfully deprived Plaintiff, of her right to adequate medical care, which is guaranteed by the Fourteenth Amendment of the United States Constitution.

61. Defendants, in failing to enact or enforce policies and procedures to ensure that arrestees received adequate medical care, violated Plaintiff's Fourteenth Amendment right to adequate medical care.

62. Defendant Lopinto failed to enact policies and procedures to ensure that the staff of JPCC would adequately respond to medical emergencies and diagnose and treat injuries sustained by arrestees.

63. Defendants were aware or should have been aware of the environment of neglect that existed at JPCC and the consequent risk of injury to arrestees that the environment created.

64. Defendants were aware or should have been aware of the actual injuries sustained by arrestees at JPCC.

65. Despite their actual and constructive knowledge of both the risk of serious injury present at JPCC and the actual injuries sustained by Plaintiff, Defendants exhibited deliberate indifference toward the medical needs of arrestees.

66. Defendants' deliberate indifference and their failure to enact or enforce policies and procedures to ensure that arrestees received adequate medical care, exacerbated the injuries Plaintiff received at the hands of Defendants.

67. As a result of the constitutionally inadequate medical care at JPCC, Plaintiffs have endured, and will continue to endure, further physical, emotional, and mental pain and suffering.

## JURY TRIAL DEMAND

68. Plaintiffs demand a jury trial to resolve all claims brought herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that, after due proceedings, judgment be entered in favor of Plaintiffs and against all Defendants, jointly and in solido, and that this Court:

I. Award Plaintiffs all compensatory damages reasonable under the circumstances, including but not limited to, physical pain and suffering, mental anguish and emotional distress, medical expenses, loss of enjoyment of life, and any other compensatory damages, for each count alleged in the Complaint;

II. Award Plaintiffs punitive damages against all Defendants for each applicable count alleged in this Complaint;

III. Award Plaintiffs' reasonable attorneys' fees, expert fees, and court costs under 42 U.S.C. § 1988 for the prosecution of his 42 U.S.C. § 1983 claims;

IV. Award Plaintiffs' reasonable attorneys fees' and court costs under state law for the prosecution of his state law claims;

V. Award Plaintiffs' legal interest on all damages awarded from the date of judicial demand until paid;

VI. Award Plaintiffs such other and further relief as this Court deems just and proper; and

VII. Award Injunctive and Declaratory Relief against the Defendants' in their official capacities.

Signed this 25th day of April, 2018

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

and

JOHN ADCOCK La Bar No. 30372<br>
P.O. Box 750621<br>
New Orleans, LA 70175<br>
Tel: (504) 233-3125<br>
Fax: (504) 308-1266<br>
Email:  jnadcock@gmail.com