UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIFFINI WOODWARD, Individually and On behalf of her minor child LW, | Civ. Action No. 2:18-cv-4236 |
| Plaintiff, | District Judge Mary Ann Vial Lemmon |
| v. | Chief Magistrate Judge Karen Wells Roby |
| SHERIFF JOSEPH P. LOPINTO, et al | |
| Defendants. | |

**SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF
SPECIAL APPEARANCE OF NON-PARTY
RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER
AND MOTION TO QUASH SUBPOENAS AND SUBPOENAS DUCES TECUM**

**I. INTRODUCTION**

During the oral argument on the Special Appearance and Motion to Quash filed by the Roderick and Solange MacArthur Justice Center ("MacArthur Justice Center" or "MJC"), the Court asked counsel for CorrectHealth whether they had identified or cited any cases holding that attorneys for a non-profit organization had, or could have, improperly solicited prospective plaintiffs. Counsel for CorrectHealth requested leave to file a supplemental brief to cite cases in that posture. The Court granted leave for them to do so.

Despite this clear directive from the Court, the supplemental brief filed by CorrectHealth does not cite a single case in which attorneys for a non-profit organization were held to have improperly solicited potential clients by in-person meetings. Nor does CorrectHealth cite any cases in which discovery was permitted on the contact of attorneys for non-profit organizations with

1

prospective clients. Thus, CorrectHealth's supplemental brief fails to include apposite authority supporting its position that MacArthur attorneys improperly solicited Ms. Woodward.

The reason for this is simple: the Supreme Court distinguishes between contacts with prospective clients made by non-profit organizations working for social change through litigation, which are protected as political speech, association, and expression under the First Amendment, In re Primus, 436 U.S. 412 (1978), and contacts with prospective clients by private lawyers for pecuniary gain, which is protected under the lesser standard applicable to commercial speech. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447 (1978). CorrectHealth failed to find a case holding that a non-profit organization lawyer improperly solicited a potential client through in-person contact because, under the Supreme Court's framework, no such case can exist.

Also, CorrectHealth asserts that the "motive" of Tiffini Woodward for filing suit is relevant to its defense. But the cases it cites do not support the position that a party's current or former attorney can be deposed (or produce memoranda of meetings with the party) in order to secure evidence of "motive." If, indeed, the relevance of evidence of motive is as widely accepted as CorrectHealth contends, surely there would be one or more decisions establishing that point. In fact, there are none.

Finally, CorrectHealth relies on Rule 26 to claim that the identity of the person who brought Ms. Woodward's situation to the attention of MJC is discoverable. That may be true, but that is a matter for CorrectHealth to seek from Ms. Woodward in Rule 26 discovery, not from a non-party attorney under Rule 45.

## II. WITHOUT HAVING A PECUNIARY INTEREST IN PROSPECTIVE CASES, ATTORNEYS EMPLOYED BY NON-PROFIT ORGANIZATIONS DO NOT VIOLATE THE BAN ON SOLICITATION

### A. *CorrectHealth has cited no case in which an attorney for a non-profit such as MJC was held to have participated in improper solicitation.*

The Court made clear that CorrectHealth's supplemental briefing was to address the question of whether a non-profit attorney's solicitation had ever been deemed improper given the significant public and policy interests in allowing non-profit attorneys to vindicate the constitutional and legal rights of vulnerable members of society. CorrectHealth failed to identify a single case in which an attorney for a non-profit such as MJC was held to have participated in improper solicitation.

CorrectHealth cites Lewis v. Bloomsburg Mills, Inc., 80 F.R.D. 109 (D.S.C. 1978), a district court case, to argue that Primus is limited to the situation where there is "absolutely no possibility of pecuniary gain." CorrectHealth Supp. Brief at 11, quoting Lewis, 80 F.R.D. at 111. But Lewis was a class action alleging employment discrimination in which counsel for plaintiffs was a cooperating lawyer with the NAACP who was in private practice at the time a letter to potential clients was sent. The Court stated that the lawyer "most probably would have personally received attorneys' fees had his clients prevailed." Lewis, 80 F.R.D. at 110 (emphasis added).

That distinction was expressly set forth in Primus itself, in which the Court held that it did not matter that the organization could collect attorney's fees for its representation. "We find equally unpersuasive any suggestion that the level of constitutional scrutiny in this case should be lowered because of a possible benefit to the ACLU." Primus, 436 U.S. at 428. The ACLU staff attorney saw no personal pecuniary gain from bringing the suit, because any award of attorney's fees was deposited in the ACLU's "central fund," and ACLU attorneys were "organized as a staff and paid by [the ACLU]." Id. at 430-31.

3

The Primus Court went on to distinguish private practice for pecuniary gain from the receipt of attorney's fees by an organization like the ACLU: "Counsel fees are awarded in the discretion of the court; awards are not drawn from the plaintiff's recovery, and are usually premised on a successful outcome; and the amounts awarded often may not correspond to fees generally obtainable in private litigation." Primus, 436 U.S. at 430.

The facts in Lewis, where the attorney was affiliated with the NAACP but would have personally benefited from an award of fees, exclude that case from Primus' ambit. As the Court noted, "The Supreme Court held that the solicitation in Primus was not improper, and that South Carolina could not justify broad disciplinary rules which prevented solicitation of prospective litigants by non-profit organizations when the person engaging in the solicitation did not stand to gain personally from the solicitation, without violating the First and Fourteenth Amendments." Lewis, 80 F.R.D. at 110 (emphasis added).[1]

CorrectHealth also cites Falanga v. State Bar of Ga., 150 F.3d 1333, 1337, 1344 (11th Cir. 1998), for the proposition that ""Georgia's prophylactic ban on in-person solicitation, whether the actor be a lawyer or a non-lawyer, stands in reasonable proportion to the interest served." But the Falanga opinion begins by saying, "[the] principal issue in this case is whether Georgia's prohibiting lawyers and their agents from soliciting professional employment from potential clients face-to-face and without invitation survives First Amendment commercial speech scrutiny as applied to appellees/cross-appellants." Id. at 1334 (emphasis added). The court next states that

---

[1] Here, attorneys working for MJC are paid a salary unrelated to the amount, if any, of damages claims they might secure on behalf of clients, and unrelated to any value that could be calculated with respect to injunctive or declaratory relief secured on behalf of clients. MJC attorneys' salaries are also unrelated to any attorney fee awards that may be granted to the MacArthur Justice Center in civil rights actions or other cases. Declaration of James Craig, Doc. No. 76-2, ¶¶ 3-4.

4

"Appellees/cross-appellants Robert Falanga and Ronald Chalker, who are licensed to practice law in and members of the State Bar of Georgia, primarily represent plaintiffs pursuing personal injury and wrongful death claims arising out of automobile accidents." Id. Clearly, Falanga does not involve an attorney for an organization like MJC, nor does it consider a rule similar to Louisiana's Rule 7.4 which clearly bars solicitation only when a significant motive for the contact is pecuniary gain. Primus is not even mentioned in the opinion.

CorrectHealth has failed to answer the Court's question whether there are any cases which uphold or apply the anti-solicitation rules to attorneys who practice at a non-profit organization like MJC which litigates as a means of political speech, expression, and association. CorrectHealth's whole litany of the evils of in-person solicitation founders on the simple fact that such client contact is not prohibited when performed by attorneys for a non-profit organization who are paid a salary regardless of the success of their efforts.[2]

> **B.  *CorrectHealth ignores the First Amendment distinction between the actions of salaried attorneys for a non-profit organization and a private attorney seeking remunerative employment from a client.***

The key to understanding the relationship between Primus and Ohralik is the extent of First Amendment protection extended to the attorney communication at issue. In Primus, the Court began by discussing its decision in NAACP v. Button, 371 U.S. 415 (1963) and its progeny: "Subsequent decisions have interpreted Button as establishing the principle that 'collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection

---

[2] CorrectHealth argues that the First Amendment is not a "shield" from proper discovery requests. CorrectHealth Supp. Br. at 11-13. That misses the point entirely. CorrectHealth claims that MJC, through Ms. Schwartzmann, improperly met Ms. Woodward at JPCC without first being contacted by Ms. Woodward, and this justifies its intrusive request for MJC's records of the initial conversation between Ms. Schwartzmann and Ms. Woodward. MJC's contention is that, under Primus, there was no improper solicitation and therefore no justification to pierce the attorney-client privilege and MJC's duty of confidentiality.

5

of the First Amendment.'" Primus, 436 U.S. at 426, quoting United Transportation Union v. Michigan Bar, 401 U.S. 576, 585 (1971). The actions of the ACLU attorney was entitled to the highest level of First Amendment protection because "[for] the ACLU, as for the NAACP, 'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association,'" Primus, 436 U.S. at 428, quoting Button, 371 U.S. at 429, 431.[3]

In Ohralik, by contrast, the Court stated at the beginning of its analysis that its then-recent cases "afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." Ohralik, 436 U.S. at 456. Turning to the contact between the attorney and the prospective client in the case before it, the Court held:

> In-person solicitation by a lawyer of remunerative employment is a business transaction in which speech is an essential but subordinate component. While this does not remove the speech from the protection of the First Amendment, as was held in Bates[4] and Virginia Pharmacy[5], it lowers the level of appropriate judicial scrutiny.

Ohralik, 436 U.S. at 457 (emphasis added).

The Ohralik Court expressly distinguished Primus by noting "Appellant does not contend, and on the facts of this case could not contend, that his approaches to the two young women involved political expression or an exercise of associational freedom, "employ[ing]

---

[3] CorrectHealth's defense of its counter-interpretation is based on dicta in then-Justice Rehnquist's dissent in Primus which is obviously not binding on this Court. CorrectHealth Supplemental Brief at 6.
[4] Bates v. State Bar of Arizona, 433 U.S. 350 (1977).
[5] Virginia Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976).

constitutionally privileged means of expression to secure constitutionally guaranteed civil rights." Ohralik, 436 U.S at 458, quoting Button, 371 U.S. at 442, and citing Primus.

The difference is clear: Primus involved political speech and expression, which has the highest level of First Amendment protection, and Ohralik involved commercial speech, which has a limited level of First Amendment protection. CorrectHealth's reading of the cases obscures, if it even acknowledges, this critical difference between the two lines of cases. The attorneys of the MacArthur Justice Center are within the protections of Primus.

CorrectHealth's discussion of the cases fails to recognize the political speech/commercial speech distinction, which is fundamental to Ohralik's holding that in-person solicitation for pecuniary gain may be regulated by the state. Thus, CorrectHealth cites Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626 (1985); but fails to acknowledge that Zauderer, like Ohralik, involved a private attorney seeking clients for tort litigation (Zauderer was planning to file lawsuits against the manufacturer of the Dalkon Shield IUD). The only aspect of the state's regulations of solicitation that was found appropriate to this commercial speech was the requirement that the terms of a contingency fee arrangement be fully explained Id. at 651-53. Similarly, in Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 470 (1988), the Supreme Court considered the propriety of a mailing of an attorney to persons against whom foreclosure proceedings had been filed. The rule in question was limited to communications "for pecuniary gain." Id. at 470. Finally, In re RMJ, 455 U.S. 191, 196-97 (1982) involved advertisements by a sole practitioner seeking clients in the areas of personal injury, real estate, contract, zoning and land use, communication, and pension and profit sharing.

In summary, Primus clearly explains that non-profit organizations like the ACLU are fundamentally different than private lawyers, in that their goal is to advance a political agenda, not for pecuniary gain. Thus, the highest level of First Amendment protection for political speech and expression protects attorneys for such organizations in their contacts with prospective clients. Primus, 436 U.S. at 431-32, 434 (1978).

### III. DISCOVERY FROM MJC IS NOT JUSTIFIED BY THE PURPORTED NEED TO ESTABLISH TIFFINI WOODWARD'S MOTIVE FOR FILING SUIT.

CorrectHealth claims that it is entitled to the details of the initial conversation between MJC attorney Schwartzmann and Ms. Woodward because the "motive" of Ms. Woodward in filing her lawsuit is relevant. Given the tissue thinness of CorrectHealth's theory of relevance, it is no surprise that most of the cases cited by CorrectHealth in this section of their brief involve the motivation or bias of witnesses or experts, not parties.[6]

With one exception, the cases cited by CorrectHealth that do involve the motive of a plaintiff for filing suit, however, do not permit discovery from the plaintiff's current or former attorneys for that purpose. The Courts in Hopey v Spear, No. 13-2220, 2016 WL 9665165, *3 (C.D. Ill. June 23, 2016), and Carosella v. One World Translation & Assocs., Inc., No. 16-805, 2018 WL 4565561, at *1, *3, (D. Colo. Sept. 24, 2018), allowed closing argument by defendants

---

[6] See United States v. Abel, 469 U.S. 45, 52 (1984) (Government witness allowed to testify that defense witness was a member of same prison gang as defendant to show bias of witness); In re CFS-Related Securities Fraud Litig., No. 99-825, 2003 WL 24136089, *3 (N.D. Okla. July 31, 2003) (settlement agreement with non-party was relevant to potential bias of employees of the settling non-party who might testify for plaintiffs); Consolidation Coal Co. v. Williams, 453 F.3d 609 (4th Cir. 2006) (discovery to explore potential bias of expert witness was permissible); Woodard v. Diamond Offshore Drilling, Inc., No. 99-1661, 2000 WL 275797, at *1 (E.D. La. Mar. 9, 2000) (deposition of expert/treating physician and the physician's clinic on their financial relationship with counsel for plaintiff was relevant to bias of witness and tend to prove that plaintiff's surgery was unnecessary).

about the plaintiff's motive for bringing suit. It did not authorize discovery from the former attorney for the plaintiff to show that motive.

In J&J Sport Prods., Inc. v. Wofford, No. 6:13-2403, 2014 WL 2980250, at *5-6 (D. Colo. Sept. 24, 2018), the Court allowed interrogatories concerning other parties the plaintiff investigated regarding the possible pirating of a closed-circuit broadcasting of a boxing match. Defendant contended that Plaintiff selectively prosecuted its rights by filing suit only against Defendant. That circumstance is not remotely similar to the instant case.

Neither is Montoya v. Village of Cuba, No. 11–0814, 2013 WL 6504291, at *18 (D.N.M. Nov. 30, 2013), in which medical records obtained in discovery were held relevant at trial. The records at issue showed that Plaintiff's attempt to be prescribed morphine for hepatitis-C at two clinics led to an incident with police, in which one of the Defendants was the police officer involved. Defendant was allowed to use this evidence (which was obtained because Plaintiff impliedly waived medical privilege in claiming damages) as proof of an improper motive in bringing the lawsuit.

In Lloyd v. Del-Jen, Inc. Fluor Co., No. 4:06-1546, 2007 WL 2156405, at *8 (E.D. Ark. July 25, 2007), the Court allowed discovery into prior suits filed by the Plaintiff. There was no attempt to obtain discovery about an initial conversation or meeting between Plaintiff and her current or former counsel.

Miller v. Schmitz, No. 1:12–0137, 2013 WL 5754945, at *3 (E.D. Cal. Oct. 23, 2013), held that "[e]vidence suggesting that Plaintiff was pressured into filing this lawsuit may go to the issue of Plaintiff's motives, bias, and credibility." The opinion does not indicate what evidence was to be admitted on this issue. There is no evidence in this case that Ms. Schwartzmann pressured Ms.

Woodward into filing this lawsuit. In fact, neither MJC nor Ms. Schwartzmann filed the lawsuit. This opinion does not support deposing MJC about its contacts with Ms. Woodward.

The one exception is Fangman v. Genuine Title, LLC, No. 14-0081, 2016 WL 3362538 (D. Md. June 17, 2016), which involves solicitation letters sent to potential class members. Interestingly, while Fangman allowed discovery of the letters sent to class members by Plaintiffs' counsel, it did not require the potential plaintiffs' responses to those letters to be produced. Id. at *3. In this case, there are no solicitation letters; moreover, CorrectHealth's position on relevance applies only to Ms. Woodward's responses to Ms. Schwartzmann's inquiries. Fangman does not advance CorrectHealth's case.

Thus, CorrectHealth fails to cite a single apposite case supporting its strange supposition that evidence of a plaintiff's motivation for filing suit could pierce attorney-client or work product privilege.

## IV. Conclusion

CorrectHealth has utterly failed to cite authority that supports its position that (1) MJC, through Ms. Schwartzmann, improperly solicited Ms. Woodward and therefore cannot assert attorney-client privilege or work-product protection with respect to the subpoenas; or (2) the "motive" of a plaintiff for filing suit is relevant and proportional to the case in a manner that permits deposition testimony and production of documents from the plaintiff's former lawyer. The MacArthur Justice Center respectfully requests that this Court quash the April 18 and April 29 Subpoenas, and award MJC attorneys' fees and costs under Fed. R. Civ. P. 45(d)(1).

                                           Respectfully submitted,
                                           */s/ James W. Craig*
                                           James W. Craig, La. Bar No. 33687
                                           Roderick & Solange MacArthur Justice Center
                                           4400 South Carrollton Ave.
                                           New Orleans, LA 70119
                                           (504) 620-2259 (p)
                                           (504) 208-3133 (f)
                                           jim.craig@macarthurjustice.org

## CERTIFICATE OF SERVICE

      I hereby certify that I have filed this pleading with the Electronic Case Filing System of the United States District Court for the Eastern District of Louisiana and have thereby served all counsel of record in this case.

      This, the 27th day of May, 2020.

                                             */s/James W. Craig*