UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIFFINI WOODWARD,** *Individually and On Behalf of Her Minor Child LW* | **CIVIL ACTION** |
| **VERSUS** | **NO:   18-4236** |
| **SHERIFF JOSEPH P. LOPINTO, III, ET AL.** | **SECTION: "S" (4)** |

## ORDER

Before the Court are Plaintiff Tiffani Woodward's **Motion for Protective Order Or, Alternatively, Motion to Quash Rule 30(B)(6) Deposition Notice Served on Former Counsel and Motion for Sanctions (R. Doc. 60)**, Non-Party Roderick and Solange MacArthur Justice Center ("MacArthur Justice Center" and "MJC")'s **Motion to Quash Subpoenas and Subpoenas Duces Tecum (R. Doc. 76)**, and Defendant Ironshore Specialty Insurance Company ("Ironshore")'s **Motion to Compel Plaintiff's Responses to Ironshore's Interrogatories and Request for Production of Documents (R. Doc. 103)**.

Woodward's Motion for Protective Order (R. Doc. 60) and MJC's Motion to Quash (R. Doc. 76) seek an order quashing a Notice of Rule 30(b)(6) Deposition Subpoena issued to non-party MacArthur Justice Center by Defendant Correct Health Jefferson LLC ("Correct Health") relating to MJC's representation and solicitation of Plaintiff Woodward. Defendants CorrectHealth Jefferson, LLC, Ironshore Specialty Insurance Company, Michelle Becnel, Margaret Armant, and Vonzelle Gabriel (collectively "Defendants") oppose these motions. R. Docs. 66 & 80. Defendant Ironshore's Motion to Compel (R. Doc. 103) seeks an order compelling Plaintiff to respond to its Interrogatories and Request for Production related to the representation and solicitation of Plaintiff Woodward by the MJC. Plaintiff Woodward opposes the motion. R. Doc. 109.

The Court held oral argument on Woodward's Motion for Protective Order (R. Doc. 60) and MJC's Motion to Quash (R. Doc. 76) on May 13, 2020. R. Doc. 104. Parties were instructed

to file supplemental briefs regarding (1) the relevance of solicitation in cases following the amendment to Rule 26 of the Federal Rules of Civil Procedure in 2015 and (2) the split in authority on the propriety of solicitation in non-profit versus private lawyer situations. *Id.* Defendant Ironshore's Motion to Compel (R. Doc. 103) was heard on the briefs on May 27, 2020.

I.  **Background**

On April 25, 2018, Plaintiff Tiffani Woodward ("Woodward") filed this suit pursuant to 42 U.S.C. § 1983 and applicable Louisiana state law individually and on behalf of her child LW. R. Doc. 1. Specifically, Woodward alleges that while incarcerated at the Jefferson Parish Correctional Center ("JPCC") in Gretna she was subjected to deplorable conditions, lack of adequate medical care, and suffered deliberate indifference involving the failure of prison staff to provide her appropriate medical treatment when she went into labor and gave birth to her first child in the toilet of her prison cell. *Id.*

On May 22, 2017, Plaintiff was arrested for a parole violation and transferred to JPCC. R. Doc. 1, p. 4. At the time of the arrest, Woodward was twenty-two years old and thirty-four (34) weeks, or about eight months, pregnant with her first child. *Id.* Woodward tested positive for opiates and admitted to using heroin daily during her pregnancy along with occasionally using methamphetamines and Xanax.[1] R. Doc. 56, p. 1. On May 23, 2017, Plaintiff received treatment from Tulane Medical Center for opioid withdrawal and dependency and was prescribed Suboxone. R. Doc. 1, p. 4. When Woodward was transferred back to JPCC, on May 25, 2017, the prison ceased any treatment. R. Doc. 1, p. 5.

---

[1] Xanax is a benzodiazepine and prescription medication used to treat anxiety and panic disorders. https://www.webmd.com/drugs/2/drug-9824/xanax-oral/details.

That same day, Woodward complained to the JPCC staff that she was experiencing vaginal bleeding, who, in response, provided her a sanitary pad. *Id.* Six to seven hours later, Plaintiff was examined by the prison nurse, Nurse Becnel. *Id.* The nurse, without a physical examination or vital signs check, determined that Woodward was experiencing Braxton Hicks contractions.[2] R. Doc. 1, p. 6.

In her cell, Woodward called out approximately every twenty minutes for twelve hours. *Id.* According to Woodward, the nurse told her to "shut the f*** up". *Id.* On May 26, 2017, Woodward finally gave birth to her child face up in the toilet. *Id.* The child did not cry for fifteen minutes. *Id.* After half an hour after the birth, JPCC staff finally entered her cell and wrapped the baby in a jacket. *Id.*

Woodward was transferred to Ochsner Medical Center where she delivered the placenta and, thereafter, suffered two seizures. R. Doc. 1, p. 7. Woodward contends that the JPCC is liable where there was no OBGYN on duty, no one qualified to deliver babies on staff, and no specialized medical equipment in case of childbirth and labor in jail. R. Doc. 55-1, p. 1. Woodward also contends that she should have immediately been transferred to a hospital at the first signs of labor because the nurse on duty did not know how to perform a pelvic exam and could not tell the difference between Braxton Hicks and real contractions. *Id.* at p. 2.

Defendant Correct Health Jefferson refutes Plaintiff's rendition of the facts. *See* R. Doc. 63-2, 2-6. Defendant contends that on May 26, around 7:50 a.m., Nurse Armant noted that Plaintiff had a small amount of blood and called Physician Assistant Juanita regarding the situation. *Id.* Thirty-seven minutes later, at 8:27 a.m., Plaintiff began screaming that something was wrong and

---

[2] "Braxton Hicks contractions are sporadic contractions and relaxation of the uterine muscle. Sometimes, they are referred to as prodromal or 'false labor' pains." Deborah A. Raines & Danielle B. Cooper, Braxton Hicks Contractions, National Center for Biotechnology Information Bookshelf (last update: Nov. 11, 2019), accessed at: https://www.ncbi.nlm.nih.gov/books/NBK470546/.

that she was having contraction every five minutes. *Id.* Six minutes later Plaintiff gave birth, and seven minutes after that, at 8:40 a.m., Plaintiff and her baby were taken to Ochsner Westbank Medical Center. *Id.* Defendant further suggests that the cause of any alleged birthing complication is due to Plaintiff's failure to follow medical advice and continued drug abuse. *Id.*

As to these instant motions, Plaintiff Woodward and Non-Party MacArthur Justice Center seek the Court quash a Notice of Rule 30(b)(6) Deposition Subpoena issued to non-party MacArthur Justice Center by Defendant CorrectHealth Jefferson LLC that seeks to elicit testimony to confirm Defendant's belief that former counsel has a policy of paying witnesses and plaintiffs to say certain things and/or file frivolous lawsuits. R. Doc. 60-1, p. 3.

Defendant Ironshore also seeks from Plaintiff information regarding the solicitation of Plaintiff, Tiffani Woodward, by MacArthur Justice Center ("MJC"), any payments or financial arrangements Plaintiff or her minor child may have received from any legal entity or law firm during her incarceration (including payments or financial arrangements from MJC), the name of the attorney and dates that Plaintiff first spoke to an attorney regarding the birth of her son, and the names of all inmates whose information, account, PIN number or phone time Plaintiff used while incarcerated. R. Doc. 103-1, p. 1-2.

Defendant CorrectHealth contends the information sought in the deposition is relevant to the issue of motive in Plaintiff bringing the lawsuit. R. Doc. 66. Defendants also contend that depositions of attorneys are permissible where the attorney is the sole source of discoverable facts. R. Doc. 66, p. 10. Notwithstanding, Defendant contends Plaintiff waived any privilege. R. Doc. 66, p. 18. Defendant finally contends that, by MJC impermissibly in-person soliciting clients, the non-profit waived and/or vitiates any privilege or protection. R. Doc. 66, p. 19-29.

Plaintiff and the MJC contend, because MJC is Plaintiff's former attorney and information about their former representation and solicitation of Woodward as a client is tangential to the

4

...
...
...
...

cause-in-fact prison cell birth underlying this lawsuit, that the deposition seeks to elicit testimony that is not relevant, obtainable elsewhere, privileged, and impermissibly burdens MJC. R. Doc. 60-1, p. 1.

Parties finally dispute whether the subpoena was properly served. While Defendant did not initially address the issue of service, Defendant later filed a reply with the service return for MJC attorney Eric Foley. *See* R. Doc. 88. However, Jim Craig, registered agent for service of process for MJC has still yet to be served. *See id.* Notwithstanding any procedural defaults, at the hearing on May 13, 2020, Jim Craig sought the Court determine the substantive matters at issue and waived their service argument.

## II.     **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 30(b)(6) "allows parties to obtain testimony from a corporation, provided the party describes with reasonable particularity the matters for examination." *Mike Hooks Dredging Co., Inc. v. Eckstein Marine Service, Inc.*, No. 08-3945, 2011 WL 2559821, at *1 (E.D. La. June 28, 2011) (citing Fed. R. Civ. P. 30(b)(6)). Thereafter, the named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6); *id.; see also*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2103, at 33 (2d ed.1994)) ("'Obviously it is not literally possible to take the deposition of a corporation; instead . . . the information sought must be obtained from natural persons who can speak for the corporation.'"). As the Fifth Circuit has explained:

> the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the

> deposition] and to *prepare* those persons in order that they can answer fully, completely, evasively, the questions posed ... as to the relevant subject matters. [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Brazos River Auth.*, 469 F.3d at 433 (internal quotations and citations omitted).

Federal Rule of Civil Procedure ("Rule") 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The Court may also modify or quash a subpoena that requires the disclosure of a trade secret or an unretained expert's opinion that does not describe specific occurrences in dispute and results from that expert's study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B).

Subpoenas issued under Rule 45 may be served upon both party and nonparties. *Petit v. Heebe*, No. 15-3084, 2016 WL 1089351, at *2 (E.D. La. Mar. 21, 2016). However, in order to challenge the subpoena, the movant must: be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *4 (E.D. La. May 2, 2014). "Both Rules 45 and 26 authorize the court to modify a subpoena *duces tecum* when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016).

Discovery of documents, electronically stored information, and things is governed by Rule 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).

Finally, Rule 26(c) governs the issuances of Protective Orders in discovery. A Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The rule offers a variety of potential options that the Court may use to protect the moving party, including forbidding or

7

limiting the scope of discovery into certain matters or requiring that a trade secret or other confidential commercial information not be revealed or be revealed in only a certain way. Fed. R. Civ. P. 26(c)(1)(D), (G). "The party seeking the protective order bears the burden to show 'the necessity of its issuance, which contemplates a particular and specific demonstration of fact[.]'" *Cazaubon v. MR Precious Metals, LLC*, 14-2241, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). The trial court enjoys wide discretion in setting the parameters of a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

### III. <u>Analysis</u>

Plaintiff and the MJC oppose any taking the deposition of a party's attorney as it is a disfavored practice in federal courts. R. Doc. 60-1, p. 5. Nonetheless, Plaintiff concedes, in certain situations, counsel is subject to being deposed. R. Doc. 60-1, p. 6. As such, Plaintiff urges the Court to follow the *Shelton* factors, as adopted by courts in the Fifth Circuit, which Defendants cannot satisfy. *Walk Haydel & Assocs., Inc. v. Coastal Power & Prod. Co.*, No. CV 05-1618, 2008 WL 11351583, at *5 (Roby, M.J.) (E.D. La. Dec. 29, 2008) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)).

Defendants argue that attorneys are not exempt from discovery where attorneys are competent fact witnesses as to relevant information. R. Doc. 66, p. 9 (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247 (D. Kan. 1995) (citing *Boughton v. Cotter Corporation*, 65 F.3d 823 (10th Cir. 1995) (applying *Shelton* criteria)). The Defendants contend the issue of solicitation and financial arrangements are discoverable as Plaintiffs' motive for bringing the lawsuit is relevant to the issue of credibility. R. Doc. 110, p. 2.

8

Before the Court turns to the propriety of deposing a former attorney and the potential applicability of the *Shelton* factors, the Court will first address the issue of relevance.[3] While the Court agrees that the issue of witness credibility is relevant, the Court is not persuaded that MJC's potential solicitation of Plaintiff Woodward is directly relevant to the issue of witness credibility.

As this Court noted in the hearing, in 2015, the Federal Rule of Civil Procedure 26 was amended to reflect "[i]nformation is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense . . ." 2015 Amendment, Comment to Fed. R. Civ. Pro. 26. This current standard of discoverability is more limited to direct relevance as opposed to the previous version of Rule 26 that stipulated information is relevant if it is "likely to lead to the discovery of relevant evidence." *Rivera v. Robinson*, No. CV 18-14005, 2019 WL 6134190, at *4 (Roby, M.J.) (E.D. La. Nov. 19, 2019).

Despite reviewing multitude of post-2015 cases that the Defendants submitted to the Court to support their position that solicitation of clients is relevant to the issue of witness credibility, the Court remains unconvinced. For example, while the court in *Fangman* stated that solicitation letters sent in anticipation of litigation were relevant to the issue of credibility, that holding, outside the Fifth Circuit, was limited to class actions and representations made to prospective class members. *Fangman v. Genuine Title, LLC*, No. CV RDB-14-0081, 2016 WL 3362538, at *3 (D. Md. June 17, 2016).

Moreover, as the Defendants note, the court in *Fangman* relied on *CRST Van Expedited* to support its conclusory assertion that solicitation of clients is relevant. *Id.* (citing *E.E.O.C. v. CRST*

---

[3] To be clear, the Court is aware that relevance is among the three factors articulated in *Shelton*. *See Walk Haydel*, 2008 WL 11351583, at *5 (" . . .circumstances should be limited to where the party seeking to take the deposition [of current or former counsel] has shown that: (1) no other means exist to obtain the information other than by deposing opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." (citing *Shelton*, 805 F.2d at 1327)). Notwithstanding, as Interrogatories sent to Plaintiff, and not a deposition of former counsel, are of issue in Defendants' Motion to Compel (R. Doc. 103), the Court choses to resolve all motions on the grounds of relevance rather than risk incongruous analyses.

*Van Expedited, Inc.*, No. C07-0095, 2009 WL 136025, at *2 (N.D. Iowa Jan. 20, 2009)). Not only was *CRST Van Expedited* decided before the 2015 Amendments to the Federal Rules of Civil Procedure, but, again, that ruling dealt specifically with the issue of solicitation of potential class members. As such, the Court finds *Fangman* of little persuasive value.

    Likewise, the myriad of other cases cited by Defendants do not squarely address the issue of solicitation of clients, but rather just speak to the issue of motive in bringing the lawsuit. *See, e.g., Hopey v. Spear*, No. 13-CV-2220, 2016 WL 9665165, at *3 (C.D. Ill. June 23, 2016) (finding motive discoverable where there is "ample evidence that [Plaintiff] grossly exaggerate[ed] his injuries to improperly increase the value of the lawsuit."); *Carosella v. One World Translation & Assocs., Inc.*, No. 16-CV-0805-WJM-KMT, 2018 WL 4565561, at *3 (D. Colo. Sept. 24, 2018) (permitting counsel to mention Plaintiff's "motive, alleged greed, [and] attempt to obtain an undue financial benefit" in trial opening and closing statements); *Montoya v. Vill. of Cuba*, No. CIV 11-0814 JB/SMV, 2013 WL 6504291, at *17 (D.N.M. Nov. 30, 2013) (permitting introduction of "evidence of Plaintiff's medical history [as it] goes to the heart of her motivation for suing Defendant" at trial); and *Lloyd v. Del-Jen/Fluor Co.*, LRJCC, No. 4:06-CV-01546 GTE, 2007 WL 2156405, at *8 (E.D. Ark. July 25, 2007) (pre-2015 amendment case finding previous collection action filed against Plaintiff may show motive and may lead to the discovery of admissible evidence). In fact, the Defendants do not cite one case, and the Court can find none, where the issue of an attorneys' solicitation of client was relevant to the Plaintiff's credibility as a witness for claims brought pursuant to 42 U.S.C. § 1983.

    To be clear, the Court is not contending that the act of MJC soliciting of Woodward is not an issue. In fact, the Court remains dubious as to the propriety of the MJC's in-person solicitation

10

efforts of Plaintiff Woodward.[4] Notwithstanding, in construing the cases discussing the appropriateness of solicitation, the Court finds the procedural posture of each telling. *In re Primus* was before the Supreme Court after a lawyer sought review of private reprimand administered by the South Carolina Board of Commissioners on Grievances and Discipline. *In re Primus*, 436 U.S. 412 (1978). In *NAACP v. Button*, the NAACP challenged the constitutionality of a Virginia state statute banning improper solicitation of any legal or professional business as applicable to NAACP, a non-profit entity. *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963). In *Ohralik*, the Ohio State Bar Association brought disciplinary proceedings against a for-profit lawyer arising out of his personal solicitation of accident victims for purpose of representing them on a contingent fee basis. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978).

The centerpiece of all these cases is that they were brought to the Court's attention via a statutory challenge or a challenged disciplinary action. None attempted to fuse the issue of in-person solicitation of a client into a private action and then attempt to ascribe the ethical

---

[4] Plaintiffs and MJC proffer *In re Primus*, 436 U.S. 412 (1978) and *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963) for the proposition that in-person solicitation of clients, as a non-profit organization dedicated to vindicating community and political rights through litigation, is a form of political expression and political association constitutes expressive and associational conduct entitled to First Amendment protection. The Court notes, however, neither of those cases dealt with one-on-one in-person solicitation of clients.
 While it appears to the Court that these cases seem to suggest that the policy line of solicitation of clients is drawn by assessing who and what profits, society at large or a personal pecuniary gain, neither address the issue of in-person solicitation.
 In *Button*, the Supreme Court analyzed the propriety of National Association for the Advancement of Colored People ("NAACP")'s meetings with prospective clients that "are sometimes prompted by letters and bulletins from the [NAACP] urging active steps to fight segregation." *Button*, 371 U.S. at 422. Similarly, in *In re Primus*, the Supreme Court dealt with a letter solicitation sent by the American Civil Liberties Union ("ACLU") that indicated the organization's interest in supporting the litigation. *In re Primus*, 436 U.S. at 412.
 In fact, the Supreme Court in *In re Primus* explicitly stated it could find no "undue influence, overreaching, misrepresentation, or invasion of privacy actually occurred in th[e] case. . . [because] [t]he transmittal of this letter—as contrasted with in-person solicitation—involved no appreciable invasion of privacy; nor did it afford any significant opportunity for overreaching or coercion." *Id.* at 435.
 Notwithstanding, the client in this case is not complaining of the solicitation and has since retained separate counsel of record to represent her in this action. The Court today need not assess the propriety of the MJC's conduct as an issue properly reserved to the disciplinary bar and declines to do so at this time.

implications of the solicitation from the lawyer or legal organization to the clients themselves as the Defendants now seek to do.

Here, the Court can find no reason to impute the potentially problematic actions of the MJC onto Plaintiff Woodward. It remains uncontested that Woodward gave birth to her son unassisted and without the presence of a medical professional in the toilet of her prison cell. The fact of whether MJC's lawyer(s) engaged in inappropriate conduct to solicit its client to bring suit does not change the facts of the case. Moreover, because the MJC no longer even represents Woodward in this case, the Court sees no reason to impute any potential wrongdoing on the part of the MJC onto Plaintiff Woodward, who is a laywoman that has no reason to know the ethical rules of conduct lawyers swear to adhere by.

The only other evidence that Defendants submit to suggest that Woodward had an improper motive in bringing this lawsuit are character attacks based on stereotypes of persons with substance abuse problems as stealers and liars. This argument is suggestive of a bias towards people who struggle with substance abuse. As such, the Court will not accept this flaccid typification of drug users to stand as cause in rendering its decision today.

As such, while the Court does not find the issue of motive irrelevant to the issues of witness bias and credibility, the Court does find, in this situation, that MJC's potentially improper solicitation of Woodward does not go the heart of the issue of Woodward's motive and credibility in this case. In fact, the Court is of the opinion, that where Defendants already know that the MJC made in-person solicitation of Plaintiff before she even thought of bringing suit on her own, Defendants already have the information to enable them to question Plaintiffs' motive in bringing the lawsuit at trial. As such, even without the financial arrangements and information on how MJC contacted Woodward and vice versa, the Defendants can still suggest their theory of Plaintiffs' motive in bringing the lawsuit at trial.

The Court does, however, question Defendants' need for the particulars of that solicitation, to include the names of all inmates whose information, account, PIN number or phone time Plaintiff used while incarcerated and the financial arrangements of inmates not even involved in the underlying lawsuit. These in no way address Plaintiff's motivation in bringing the lawsuit but rather stinks of a vendetta CorrectHealth has against MJC who has now brought multiple claims from multiple clients challenging CorrectHealth's medical care of inmates in correctional facilities. For that, the Court will not allow Defendants to partake in an all-out fishing expedition nor will this Court sanction the gathering of information in this case to be used in future cases.

As such, the Court is of the opinion that Defendants deposition notice and interrogatories seeking information as to the solicitation of Woodward as well as financial arrangements between MJC and Woodward and other inmates, not involved in this lawsuit, housed at CorrectHealth facilities whom have also brought suits pursuant to 42 U.S.C. § 1983, is simply not relevant to the issues in this case. Accordingly, the Court grants Plaintiff Tiffini Woodward's Motion to Quash (R. Doc. 60) and the MacArthur Justice Center's Motion to Quash (R. Doc. 76). Ergo, the Court denies Ironshore's Motion to Compel (R. Doc. 103).

Notwithstanding, given the complexities of this case and the potentially improper conduct by MJC, the Court does not find that the Defendants serving the deposition notice upon the MJC warrants sanctions of an award of attorneys fees. As such, the Court denies Plaintiff Tiffini Woodward's Motion to Quash (R. Doc. 60) that extent.

## IV. Conclusion

**Accordingly,**

**IT IS ORDERED** that Plaintiff Tiffani Woodward's **Motion for Protective Order Or, Alternatively, Motion to Quash Rule 30(B)(6) Deposition Notice Served on Former Counsel and Motion for Sanctions (R. Doc. 60)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that **Plaintiff Tiffani Woodward's Motion for Protective Order Or, Alternatively, Motion to Quash Rule 30(B)(6) Deposition Notice Served on Former Counsel and Motion for Sanctions (R. Doc. 60)** is **GRANTED** insofar as the subpoena duces tecum and deposition notice are quashed.

**IT IS FURTHER ORDERED** that Plaintiff Tiffani Woodward's **Motion for Protective Order Or, Alternatively, Motion to Quash Rule 30(B)(6) Deposition Notice Served on Former Counsel and Motion for Sanctions (R. Doc. 60)** is **DENIED** to the extent Plaintiff seeks sanction and/or any award of attorneys fees.

**IT IS FURTHER ORDERED** that Non-Party Roderick and Solange MacArthur Justice Center 's **Motion to Quash Subpoenas and Subpoenas Duces Tecum (R. Doc. 76)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Ironshore's **Motion to Compel Plaintiff's Responses to Ironshore's Interrogatories and Request for Production of Documents (R. Doc. 103)** is **DENIED**.

New Orleans, Louisiana, this <u>13th</u> day of July 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**