UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIFFINI WOODWARD, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO:  18-4236** |
| **SHERIFF JOSEPH P. LOPINTO, III, ET AL** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Exclude Testimony and Opinions of Plaintiff's Experts** (Rec. Doc. 142) filed by defendants, CorrectHealth Jefferson, LLC, Ironshore Specialty Insurance Company, Michelle Becnel, Margaret Armant, and Vonzelle Gabriel, is **GRANTED in part**, and Alysse Reams' testimony is limited as set forth herein. In all other respects, the motion is **DENIED.**

## I. BACKGROUND

This matter involves § 1983 claims for failure to provide adequate medical care, arising from plaintiff's labor and delivery into a cell toilet, at the Jefferson Parish Correction Center ("JPCC"). Detailed background facts are set forth in other court orders, and thus are not restated here. Defendant, CorrectHealth Jefferson, LLC, is the contract health care provider for the JPCC, Ironshore Specialty Insurance Company is its insurer, and Becnel, Gabriel, and Armant are its nurse employees who were charged with providing care at the time period relevant to this case.

At issue in this case, among other things, is the length of time that plaintiff was in labor leading up to the delivery of her son in her JPCC cell toilet. Also at issue are the JPCC policies

regarding training and provision of healthcare to pregnant inmates. To this end, plaintiff seeks to introduce the testimony of two experts, Nurse Alysse Reams and Dr. Homer Venters. Reams has opined that CorrectHealth had knowledge of plaintiff's labor and failed to respond to her requests for medical help and provide appropriate medical care, and that CorrectHealth's practices and policies, or lack thereof, contributed to the failure to provide Woodward with adequate care. Venters has opined that CorrectHealth and JPCC grossly failed in multiple ways, including failing to provide care for Woodward and failing to properly train and supervise staff. Venters also opined that the overall care of Woodward was a gross deviation from the standard of care.

Defendants have moved to exclude both experts' testimony, arguing that (1) neither is qualified as an expert on the applicable standard of care; (2) their testimony and opinions are based on irrelevant standards; (3) their testimony is the product of unreliable principles and methods based upon insufficient facts or data; and (4) both reach impermissible legal opinions and conclusions. Plaintiff opposes the motion.

## II. DISCUSSION

### A. Legal Standards

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. Gen. Elec. Co. v. Joiner, 118 S. Ct. 512, 515 (1997). Federal Rule of Evidence 702 provides that "[a] witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise" if the testimony is both relevant and reliable. Expert testimony is relevant if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue." Fed. R. Evid. 702(a). Expert testimony is reliable if it is "based on sufficient

facts or data", "the product of reliable principles and methods" and the expert"reliably applied

the principles and methods to the facts of the case." Fed R. Evid. 702(b)-(d). The rule requires

the district court to act as a gatekeeper to exclude expert testimony that is based merely on

subjective belief or unsupported speculation. Daubert v. Merrell Dow Pharm., 509 U.S. 579, 590

(1993). The party offering the testimony bears the burden of establishing its reliability by a

preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir.

1998).

    In determining reliability, courts may rely on factors discussed by the Daubert court,

including "whether the theory or technique the expert employs is generally accepted; whether the

theory has been subjected to peer review and publication; whether the theory can and has been

tested; whether the known or potential rate of error is acceptable; and whether there are

standards controlling the technique's operation." Broussard v. State Farm Fire and Cas. Co., 523

F.3d 618, 630 (5th Cir. 2008). However, "Daubert [itself] makes clear that the factors it mentions

do not constitute a 'definitive checklist or test.' " Kumho Tire Co. v. Carmichael, 526 U.S. 137,

150 (1999) (emphasis in original). "The factors identified in Daubert may or may not be

pertinent in assessing reliability, depending on the nature of the issue, the expert's particular

expertise, and the subject of his testimony." Id. Rather, the reliability inquiry must remain

flexible because "not every Daubert factor will be applicable in every situation; and a court has

discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d

320, 325 (5th Cir. 2004).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. Rushing v. Kansas City S. Ry. Co., 185 F.3d 496 (5th Cir. 1999), superseded by statute on other grounds, as noted in Mathis v. Exxon Corp., 302 F.3d 448, 459 n.16 (5th Cir. 2002). A witness qualified as an expert is not strictly confined to his area or practice, but may testify regarding related applications; "a lack of specialization does not affect the admissibility of the opinion, but only its weight." United States v. Wen Chyu Liu, 716 F.3d 159, 168–69 (5th Cir. 2013) (quoting Wright v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991)).

## B. Qualifications

### 1. Nurse Alysse Reams

Plaintiff has submitted Nurse Reams' testimony addressing two areas: that plaintiff was a high-risk patient whose observable, progressive symptoms of labor were ignored by CorrectHealth and JPCC staff; and that there were gaps and failures in JPCC policy surrounding the provision of prenatal care. Defendants argue that Reams has no experience working in a prison medical setting, has never evaluated prison medical policies, and admits that she is not qualified to diagnose active labor.

Reams has six years of experience as a labor and delivery nurse. In her current position, she is involved in approximately 300 deliveries per month. According to her CV, she is an expert in labor and delivery triage, which is the determination of whether a patient presenting for labor and delivery is safe, whether the infant is safe, and whether labor has started. She also has

specific experience with the beginning stages of labor and treating patients with opioid addiction

issues.

Reams does not have any relevant policy experience. In her deposition, Reams testified

as follows:

> Q.  First off, have you ever seen policies and procedures for a jail medical provider?
> A.  I have not.
> Q.  Have you ever --
> A.  I'm not familiar with –
> Q.  Have you ever written any policies or procedures for a jail medical provider?
> A.  For a jail medical -- no.
> Q.  Have you ever done any training for a jail medical provider?
> A.  Well, not for a medical provider. I've gotten like modules on what we do in the hospital when we have an incarcerated patient, like just hospital standards. But not jail policy.
> Q.  Right. And I understand that. And as we talked about before, your -- your experience is working in a hospital setting, right?
> A.  Right, right.
> Q.  So what do you know about jail medical policies and procedures for medical providers, if anything?
> A.  I would -- I don't really know very much. I could -- I guess everything I would say would be assumptions on like what nurses and doctors do in outpatient care settings. But I can't speak to specifically what the standards are for an incarcerated situation.

Reams Depo., Rec. Doc. 142-3, pp. 158-59.

Considering this testimony and Reams' CV, the court finds that while Reams is qualified

to testify on questions related to signs and symptoms of labor and labor and delivery triage, she

is not qualified to testify on policy questions. With respect to defendant's argument that Reams'

labor and delivery triage experience is not relevant because her experience lies in a hospital, not

a prison, setting, this lack of specialization goes to weight, not admissibility. Accordingly,

Reams is qualified to testifying regarding the signs and symptoms of labor, and what nurses should do when they triage a pregnant patient, and whether, considering her labor and delivery triage expertise, plaintiff exhibited signs of labor that should have been recognized and acted upon by medical staff. If plaintiff intends to submit Reams' report to the jury, it must be modified accordingly.

### 2. Dr. Homer Venters

Dr. Venters has opined that CorrectHealth and JPCC grossly failed in multiple ways, including failing to provide care for Woodward and failing to properly train and supervise staff. He also opined that the overall care of Woodward was a gross deviation from the standard of care. Defendants argue that Dr. Venter is not an obstetrician, nor has he had any experience or training with labor and delivery since medical school in the 1990s. Defendants further contend that Venters has no expertise regarding the standard of care in the Louisiana correctional health context and that, because he does not, he is barred from testifying by La. R.S. 9:2794(A)(1),[1] the co-called "locality rule". However, " 'the Federal Rules of Evidence control the admission of expert testimony.' "

---

[1]La. Rev. Stat. § 9:2794 provides in part:

In a malpractice action based on the negligence of a physician . . . dentist . . . optometrist . . . or a chiropractic physician licensed . . . the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances. . . .

Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009) (quoting Mathis v. Exxon Corp., 302 F.3d 448, 459 (5th Cir. 2002)).Thus, the determination whether Venters' testimony is admissible is made with reference to Federal Rule of Evidence 702, not Louisiana Revised Statute § 9:2794. Questions regarding his familiarity with applicable standards go to the weight accorded his testimony.

Dr. Venters is a physician, internist and epidemiologist who has over a decade of experience in providing, managing, and leading prison health services. He served as Assistant Commissioner and Chief Medical Officer of the New York City Jail Correctional Health Service, where he was responsible for all aspects of health services including physical and mental health, addiction, quality improvement, re-entry, and morbidity and mortality reviews. He has published and presented widely on mental and physical health services at correctional facilities, and has conducted hundreds of medical reviews and regularly testifies as an expert. The court finds that Dr. Venters' extensive experience in prison healthcare systems qualifies him to testify consistent with the conclusions set forth in his report.

## C.  Relevance

Reams will testify as to what nurses should do when they triage pregnant women, as well as signs and symptoms of labor. Venters will testify to appropriate policies in prisons. These opinions go to the question whether defendants breached their duty to provide adequate medical care, and will assist the trier-of-fact. They are therefore relevant.

## D.  Reliability

Defendants argue that Reams' and Venters' opinions are unreliable, because they do not

address alternative causes for Woodward's labor and precipitous delivery, and a reliable causation opinion must rule out alternative causes. This argument is based on a mischaracterization of plaintiff's claims. Woodward does not allege that defendants caused the onset of her labor and subsequent delivery, but that, by failing to contact a competent provider and transfer to a hospital upon her manifestation of recognizable signs of labor, they caused her traumatic delivery in the JPCC cell toilet. Accordingly, this argument is without merit.

### 5. Legal Conclusions

Defendants argue that Reams and Venters intend to testify to impermissible legal conclusions. While not pointing to any specific legal conclusion in the experts' reports or deposition testimony, defendants argue the experts should not be allowed to testify that acts or omissions amount to indifference to serious medical needs. Plaintiff agrees that experts may not testify to impermissible legal conclusions. Reams's testimony focuses on the signs and symptoms of labor, and Venters will testify to policies and standards. While the jury may infer indifference from this testimony, the experts will not testify impermissibly.

Accordingly,

**IT IS HEREBY ORDERED** that the **Motion to Exclude Testimony and Opinions of Plaintiff's Experts** (Rec. Doc. 142) filed by defendants, CorrectHealth Jefferson, LLC, Ironshore Specialty Insurance Company, Michelle Becnel, Margaret Armant, and Vonzelle Gabriel, is **GRANTED in part**, and Alysse Reams' testimony is limited as set forth herein. In all

other respects, the motion is **DENIED.**

     New Orleans, Louisiana, this  17th  day of May, 2021.

_____<br>
**MARY ANN VIAL LEMMON**<br>
**UNITED STATES DISTRICT JUDGE**