UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TIFFINI WOODWARD**                          **CIVIL ACTION**

**VERSUS**                                    **NO:  18-4236**

**SHERIFF JOSEPH P. LOPINTO, ET**             **SECTION: "S" (4)**
**AL**


## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** (Rec. Doc. 144) filed by defendants, CorrectHealth Jefferson, LLC ("CorrectHealth"), Ironshore Specialty Insurance Company, Michelle Becnel, Vonzelle Gabriel, and Margaret Armant (collectively "defendants"), is **GRANTED** in part. Plaintiff's claims brought on behalf of her minor child, LW, are **DISMISSED**, and plaintiff's claims for injunctive relief and declaratory relief are **DISMISSED** as to CorrectHealth, Ironshore Specialty Insurance Company, Michelle Becnel, Vonzelle Gabriel, and Margaret Armant. In all other respects, the motion is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment Regarding Deliberate Indifference** (Rec. Doc. 147) filed by defendants is **GRANTED** in part, and the claims against Vonzelle Gabriel and Margaret Armant are **DISMISSED**. In all other respects, the motion is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment Regarding Punitive Damages** (Rec. Doc. 145) filed by defendants is **GRANTED** in part, and plaintiff's claim for punitive damages for intentional infliction of emotional distress is **DISMISSED**. The

motion is **DENIED** as to Nurse Becnel. With respect to CorrectHealth, the motion is

**PRETERMITTED** pending the decision of the Fifth Circuit Court of Appeals in <u>Moore v.

LaSalle Corr., Inc.</u>, No. 20-30739 (5th Cir. Nov. 30, 2020);

      **IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on

Liability** (Rec. Doc. 148) filed by plaintiff is **DENIED**.

## I.  BACKGROUND

      In this case brought under 42 U.S.C. § 1983, plaintiff alleges her Eighth and Fourteenth

Amendment rights were violated by defendants' deliberate indifference to her serious medical

needs while incarcerated, resulting in her labor and the delivery of her son in her prison cell

toilet. Defendant CorrectHealth contracts with the Jefferson Parish sheriff's Office to provide

medical care to persons housed in the Jefferson Parish Correctional Center, Ironshore Specialty

Insurance Company is its insurer, and nurses Becnel, Gabriel, and Armant are CorrectHealth

employees.

      On May 22, 2017, plaintiff Tiffini Woodward, then eight months pregnant, was taken to

Jefferson Parish Correctional Center ("JPCC") after testing positive for heroin, in violation of

her parole. At intake it was noted that she was pregnant and a drug user, and she was referred to

the infirmary. Staff at JPCC placed her in a cell and issued her a double mattress, double food

portions, prenatal vitamins, and Tylenol 3 times daily.

      The next day, May 23, 2017, Woodward complained that she was bleeding. She was

taken to Tulane Lakeview Hospital for evaluation and treatment. Woodward was treated by Dr.

Cecelia Gambala, a specialist in obstetrics and maternal fetal medicine, and residents under her

2

supervision. After observing Woodward for two days, Gambala determined she was not at a high risk of having a precipitous delivery and discharged her to JPCC the afternoon of May 25. The discharge report recommended that Woodward receive multiple medications and recommended follow up appointments related to her pregnancy. The discharge report noted that, on her third day in the hospital, there were "[n]o signs or symptoms of preeclampsia."

Upon returning to JPCC, Woodward was booked into the same cell. Around 5:00 p.m., Woodward reported that she was bleeding and at around 6:00 p.m., she was given a pad by Nurse Vonzelle Gabriel. At approximately 6:30 p.m., Woodward reported bleeding again, and, having flushed the pad, was given another pad to verify the bleeding. Starting at approximately 10:45 p.m.,Woodward reported that she was experiencing contractions. She reported them as worsening over the next 15 minutes, and at approximately 11:00 p.m., Nurse Michelle Becnel took Woodward's vitals. Becnel noted in Woodward's chart that she did not see any "S/S" (signs or symptoms) of pre-labor conditions, told Woodward to wear a sanitary pad, and told her to keep her abreast of signs and symptoms. The JPCC logbook from around that time indicates that Becnel told Woodward that she was having Braxton Hicks contractions, i.e., false labor. However, Woodward has testified that Becnel cursed her, and alleges that at some point during either the night of the 25th or the early morning of the 26th, after telling Becnel that she felt really bad, Becnel told her to "Shut the f*** up. Go back to your corner." There are no documented interactions after 11:00 p.m. Becnel never called the treating physician. However, Woodward alleges that she was complaining of stomach pain and vaginal pain at least every 20 minutes, banging on the door throughout the night, and screaming in anguish, although there is

no sworn testimony on this point.

At 7:50 on the morning of May 26, shortly after Nurse Armant came on duty, Woodward reported she was bleeding and in pain, and the physician's assistant was called and it was reported she would arrive in half an hour. Just before 8:30 a.m. Woodward reported that she was having contractions every five minutes. Soon after, Woodward reported that she was having her baby. Woodward testified that she was yelling for help, eventually went to the toilet in her cell, pushed, and delivered her baby into the toilet. She said that the baby hit the toilet, went in to the water, and flipped back up with the umbilical cord around his neck and was not making any noise, and she thought he was dead.

It is unclear how long after Woodward delivered her baby that deputies and CorrectHealth staff entered the cell to address the situation, though Woodward claims it took them 15 minutes. Woodward testified that a deputy picked the baby out of the toilet. Around 8:40 a.m. Woodward and her child were taken to Ochsner Westbank where she eventually delivered the placenta, having a seizure in the process, and both she and her child received treatment.

From August 2017 to May 2018 Woodward was out of prison, and during that time she received drug treatment counseling, including group therapy at Addiction Recovery in Metairie, where she discussed the incident. She was subsequently arrested on other charges and pleaded guilty to conspiracy to commit armed robbery. At the time of Woodward's deposition, in October 2019, she was waiting to be evaluated for mental health treatment at CrescentCare. According to Woodward, she has recurring nightmares about the incident and is scared to allow

4

her son near water, even to take a shower.

Woodward filed suit under 42 U.S.C. § 1983, alleging claims under the Eighth and Fourteenth Amendments for deliberate indifference to her serious medical needs, as well as state law causes of action for negligence and intentional and negligent infliction of emotional distress. She also seeks punitive damages.

Defendants have filed three motions for summary judgment. In the motions, defendants argue that plaintiff cannot succeed on her § 1983 claims because she cannot establish deliberate indifference by either the individual nurses or CorrectHealth, and that she cannot establish that she or her son sustained substantial harm caused by defendants' acts or omissions. Defendants further argue that plaintiff did not experience emotional distress severe enough to establish intentional infliction of emotion distress, and that punitive damages are not recoverable from the moving defendants. Defendants also contend that plaintiff is not entitled to injunctive or declaratory relief. Woodward opposes the motions, and has filed a motion for partial summary judgment on liability against CorrectHealth, arguing that CorrectHealth's policies were the moving force behind the harm suffered by Woodward.

## II. DISCUSSION

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file,

5

and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986)).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.    42 U.S.C. § 1983 Claims**

Title 42, section 1983 of the United States Code permits a plaintiff to bring a cause of action against a state actor for a violation of her constitutional rights. Healthcare professionals under contract with a prison to provide medical care to prisoners are considered state actors because their actions in providing medical care to prisoners are fairly attributable to the state.

6

Bishop v. Karney, 408 F. App'x 846, 848 (5th Cir. 2011) (citing West v. Atkins, 108 S. Ct. 2250,

2255-56, 2258-60 (1988)). "[P]retrial detainees have a constitutional right, under the Due

Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with

deliberate indifference on the part of the confining officials." Thompson v. Upshur Cty., TX, 245

F.3d 447, 457 (5th Cir. 2001) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976). While such

claims by pretrial detainees "sound in the Due Process Clause of the Fourteenth Amendment,"

they "are analyzed under the same rubric as Eighth Amendment claims brought by prisoners."

Villegas v. Metro. Gov't of Nashville, 709 F.3d 563, 566 (6th Cir. 2013).

Section 1983 constitutional claims alleged by pretrial detainees arise from either episodic

acts or omissions of individual officials, or from the general conditions of confinement in the jail

or prison. See Shepherd v. Dall. Cnty., 591 F.3d 445, 452 (5th Cir. 2009). A case is an episodic

act or omission case if the plaintiff's allegations are against specific jail officials, pointing to a

municipal policy or custom that caused those actions. See id.; Olabisiomotosho v. City of Hous.,

185 F.3d 521, 526 (5th Cir. 1999). A conditions of confinement case "occurs when a

constitutional attack is made on the 'general conditions, practices, rules, or restrictions of pretrial

confinement.' A condition is usually the manifestation of an explicit policy or restriction, such

as the number of bunks per cell, mail privileges, disciplinary segregation, etc." Brown v. Bolin,

500 F. App'x 309, 312 (5th Cir. 2012) (quoting Hare v. City of Corinth, Miss., 74 F.3d 633, 644

(5th Cir. 1996) (other citations omitted)).

Here, plaintiff's complaint does not specify whether it is brought as an episodic act claim

or a conditions of confinement claim. Plaintiff makes arguments regarding both individual acts

flowing from policies as well as a pattern of deficiencies in the JPCC. However, the Fifth

Circuit, in declining to permit a plaintiff to proceed under both theories, found that "when [an

official's] actions were interposed between the county and the decedent, it [is] clear that the case

was one for an episodic act or omission."Anderson v. Dallas Cty. Texas, 286 F. App'x 850, 858

(5th Cir. 2008) (citing Flores v. Cty. of Hardeman, Tex., 124 F.3d 736, 738 (5th Cir. 1997). In

this case, while plaintiff alleges a pattern of deficiencies, her claim arises from the alleged

actions of the nurses, state actors interposed between plaintiff and CorrectHealth. Moreover, the

Fifth Circuit has also determined that a "complaint [which] turns on [jail officials'] alleged

failure to take better care of her, and [a jail official's] failure to medically screen her and secure

her to treatment . . . . perfectly fits the definition of the episodic omission." Olabisiomotosho,

185 F.3d at 526. Accordingly, the court analyzes this case as an episodic act or omissions claim.

> To establish a claim for deliberate indifference to serious medical needs:

> The prisoner must first prove objective exposure to a substantial risk of serious
> harm—in other words, the prisoner must prove a serious medical need. Second,
> the prisoner must prove the officials' subjective knowledge of this substantial risk.
> Third, the prisoner must prove that the officials, despite their actual knowledge of
> the substantial risk, denied or delayed the prisoner's medical treatment. Finally,
> the prisoner must prove that the delay in or denial of medical treatment resulted in
> substantial harm, such as suffering additional pain.

Petzold v. Rostollan, 946 F.3d 242, 249 (5th Cir. 2019).

> The parties do not seriously dispute that labor and delivery constitutes a serious need.

While "the general condition of being pregnant does not necessarily constitute a serious medical

need at any given moment in time during incarceration" . . . . when it progresses to labor, it does.

Preston v. Cty. of Macomb, 2019 WL 9899918, at *4–5 (E.D. Mich. Feb. 19, 2019) (collecting

cases); see also, Bingham v. Webster Cty., (N.D. Miss. Oct. 1, 2007) (denying summary judgment on claim for deliberate indifference to serious medical needs where prison staff had knowledge of plaintiff's pregnancy, that she was bleeding and in pain, and waited 21 hours to act on that knowledge).

In a case where the plaintiff alleges a denial of medical care, a plaintiff can demonstrate deliberate indifference by showing that a prison official "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Alderson v. Concordia Par. Corr. Facility, 848 F.3d 415, 422 (5th Cir. 2017) (internal citations omitted).

### 1. Claims of deliberate indifference to serious medical needs by nurses

To prevail on her § 1983 claim as to the nurses, plaintiff must demonstrate the nurses' subjective knowledge of a substantial risk of serious harm, and that despite their actual knowledge of the substantial risk, they denied or delayed medical treatment to plaintiff.

Defendants contend that they are entitled to summary judgment on this issue, because plaintiff is required to prove that defendants knew of and disregarded a substantial risk of pre-term labor and precipitous delivery, which defendants argue she cannot do. In support, they note that on intake, plaintiff was noted as pregnant, and when she began bleeding she was referred to a maternal fetal medicine specialist, and re-admitted to JPCC after it had been determined she was not in labor, and preeclampsia was ruled out. Defendants have submitted the expert testimony of board-certified obstetrician and gynecologist, Dr. Kathleen T. Sullivan, that Woodward was appropriately screened at intake, and once re-admitted, was appropriately

9

monitored, based on entries in JPCC logbooks and CorrectHealth's medical records. Dr. Sullivan further opines that the delivery was precipitous, and completely unexpected by all concerned. Thus, defendants contend they cannot be charged with subjective knowledge that plaintiff was at risk for the premature labor and precipitous delivery that ensued.

This argument is premised on a mischaracterization of plaintiff's position. Woodward does not argue that the defendants knew she was at risk of pre-term labor and a subsequent precipitous delivery, and failed to respond appropriately. Rather, she contends that notwithstanding her risk profile upon re-admission to JPCC, following her subsequent onset of labor, which she reported to the staff and which the staff should have recognized, and following repeated requests for help, defendants did not take steps to ensure she did not deliver the baby in her cell, and experience the resulting unnecessary pain, traumatic delivery into a toilet, delayed delivery of the placenta, and a resulting seizure. Thus, the issue is not whether defendants knew that plaintiff was at risk for premature labor and precipitous delivery, but whether plaintiff can establish that once labor commenced, the nurses, despite their knowledge of it, denied or delayed medical treatment.

It is undisputed that when plaintiff reported bleeding to Nurse Gabriel, she responded by appropriately monitoring her condition. With respect to Nurse Armant, the record reflects that she checked on Woodward shortly after arriving for her shift, and at 7:50 a.m., upon learning of plaintiff's complaint of contractions, she assessed plaintiff, noted blood, and notified the physician's assistant. She followed-up with a second notice to the physician's assistant when she had not arrived after 30 minutes. On this record, the court finds no evidence that Gabriel or

Armant responded with deliberate indifference. Gabriel was appropriately monitoring to see if and how much Woodward was bleeding; Armant determined there were active labor signs and appropriately contacted the physician's assistant. Accordingly, Gabriel and Armant are entitled to summary judgment on the § 1983 claims against them.

However, there is a fact dispute as to what occurred on Becnel's shift over the night of May 25th and into the morning of May 26th. While the medical and JPCC records reflect no interactions between around 11:00 p.m. and 8:00 a.m., plaintiff alleges that she begged for help for hours, and testified that Becnel cursed her. A late entry in the JPCC log also lists, without specifying a time, that Woodward reported bleeding and contractions. There is also a discrepancy in that the prison log books reflect that Nurse Becnel diagnosed plaintiff with Braxton Hicks false labor contractions at 11:00 p.m., suggesting that Becnel had noted some contractions, but Becnel disputes that she made such a diagnosis.

Because a jury could conclude from these disputed facts that Becnel responded with deliberate indifference to Woodward's serious medical needs, summary judgment is not appropriate.

### 2. Section 1983 claims against CorrectHealth

Plaintiff has also sued CorrectHealth for a violation of her constitutional rights. "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." <u>Alfred v. Corr. Corp.</u>, 2009 WL 789649, at *2, n.1 (W.D. La. Mar. 24, 2009) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978) (other citations omitted)). Thus, to establish CorrectHealth's liability under § 1983, Woodward must prove the existence of a policymaker, an official policy, and a violation of the plaintiff's constitutional rights for which the moving force was the policy or custom. See <u>Duvall v. Dall. Cnty., Tex.</u>, 631 F.3d 203, 209 (5th Cir. 2011); <u>Piotrowski v. City of Hous.</u>, 237 F.3d 567, 578 (5th Cir. 2001). The requirement of a policymaker, an official policy, and the 'moving force' of the policy, serve to distinguish individual violations by government healthcare contractor employees from those that can be fairly considered actions of the government health contractor itself. <u>Piotrowski</u>, 237 F.3d at 578.

In this case, plaintiff argues that CorrectHealth has the following policies that were the moving force behind her traumatic labor and delivery: a policy and custom not to train its nurses to detect labor or deliver babies; a policy and custom not to equip the infirmary to monitor labor for pregnant arrestees; a policy and custom to not hire professionals with the ability to provide prenatal care and deliver babies; and a policy and custom of excluding labor or childbirth from its quality review process.

CorrectHealth argues that its policy regarding pregnant women conforms to the relevant and applicable accreditation standard, which meets or exceeds the constitutional minimum. The policy provides:

> When the patient exhibits signs and symptoms suggestive of active labor, the healthcare staff will notify the on-call provider for instructions. If it is determined that the patient is in labor, she will be transported via EMS to the delivering hospital for evaluation. The healthcare staff will contact the labor & Delivery staff to provide a patient report.

CorrectHealth Jefferson Policy & Procedure: Counseling and Care of the Pregnant Inmate, Rec. Doc. 149-9, p. 2, ¶16.

The foregoing reflects that it is CorrectHealth's policy to transport to a hospital all pregnant women showing signs of active labor. While there is nothing facially unconstitutional about this policy, implicit in it is an obligation to train staff to detect the signs and symptoms of labor, to hire professionals capable of detecting labor, to equip the JPCC facility to monitor for the onset of labor, and to staff the facility adequately to undertake this task.

### a. Failure to train

"An inadequate training program or a failure to train 'may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the [county officials] come into contact.'" Shepard v. Hansford Cnty., 110 F. Supp. 3d 696, 716 (N.D. Tex. 2015) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). To prevail on such a claim, the plaintiff must establish that "(1) the training procedures of the policymaker were inadequate; (2) the policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury."

13

Id. (citing Huong v. City of Port Arthur, 961 F. Supp. 1003, 1007 (E.D. Tex.1997) (citing Baker v. Putnal, 75 F.3d 190, 200 (5th Cir.1996)). To satisfy the deliberate indifference requirement in connection with a failure to train claim, plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." Id. (quoting Benavides v. Cnty. of Wilson, 955 F.2d 968, 972 (5th Cir.1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)).

  In this case, the summary judgment evidence presented by plaintiff reflects that there was no training regarding detection of labor. Plaintiff has provided the expert report of Dr. Homer Venters. His report concludes that there was a gross failure by CorrectHealth and Jefferson Parish Sheriff's Office to properly train, supervise and monitor conditions of health services in JPCC, including an absence of training on how to detect and report symptoms of active labor. In so concluding, Dr. Venters relied upon the testimony of Nurse Becnel that she had had some obstetrics training in her initial orientation in 2005 or 2006, and that she was unaware of any policy that indicated when she should check fetal heart rate, how to employ an OB/GYN kit that was present in the infirmary, and under what circumstances it should be used. Further, the 30(b)(6) deposition of Jean Llovet, CorrectHealth's corporate representative, reflects that CorrectHealth didn't provide training on detection of labor.

  On the evidence presented, a reasonable jury could conclude that CorrectHealth's failure to train its staff on how to detect labor is a policy that amounted to deliberate indifference that

was the moving force for the harm suffered by plaintiff. Accordingly, summary judgment is not appropriate on this claim.

### b. Inadequate exam rooms and understaffing

Plaintiff also argues that inadequate exam rooms and understaffing reflect actionable policy failures. However, no proof has been submitted that these alleged failures were a moving force of plaintiff's harm. There is no evidence that had a larger exam room been available, Nurse Becnel would have conducted an earlier examination and referred Woodward out sooner, and avoided her delivery in the cell toilet. Likewise, there is no evidence that competing work obligations prevented Becnel from attending and referring Woodward. To the contrary, while there was a brief delay of 15 minutes or so in examining Woodward after the 11:00 p.m. call, the logbook entries reflect a quiet night without numerous duties being imposed on Becnel. Thus, inadequate exam rooms and understaffing do not provide a basis for CorrectHealth's liability to plaintiff.

### c.  Quality improvement process failures

Plaintiff also alleges a policy failure in that CorrectHealth did not adequately address pregnancy-related issues in its quality improvement process. Plaintiff argues that had CorrectHealth focused on pregnancy in its quality improvement process, the other failures would have been identified and cured, sparing her the traumatic labor and delivery. While the failure to focus on pregnancy-related issues in its quality improvement process may have brought to light the failure to train, to be considered the "moving force" for plaintiff's injuries, the fact-finder would have to conclude that if CorrectHealth conducted a certain type of review, it would

necessarily have reached specific conclusions that would trigger it to act in a way that would have avoided plaintiff's harm. This chain of events is too attenuated to be considered a moving force. However, the court finds that evidence regarding the quality improvement process is relevant to establishing whether CorrectHealth's failure to train was the result of deliberate indifference.

### 3.  Medical causation of substantial harm

Defendants also argue that they are entitled to summary judgment because plaintiff cannot establish that she or her son sustained substantial harm.

#### a. Harm suffered by plaintiff

Defendants argue both that the plaintiff did not experience substantial harm,[1] and that because she has not submitted expert testimony, plaintiff cannot establish medical causation. Specifically, defendants argue that there is no expert testimony that their acts or omissions caused plaintiff to go into premature labor, or the precipitous delivery.

This argument rests on a mischaracterization of plaintiff's complaint. Plaintiff does not allege that defendants caused her premature labor, or that premature labor constitutes the harm she suffered. The substantial harm alleged by plaintiff is: the additional, unnecessary pain and suffering she experienced because once in labor; the fact that she was not transferred to a hospital or other facility better equipped for childbirth and capable of administering pain

---

[1]Initially, defendants argued that plaintiff's claims were barred by 42 U.S.C. 1997e(e) of the Prison Litigation Reform Act ("PLRA"), because that statute requires a physical injury, which defendants argue Woodward has not alleged. Defendants abandoned that position in their Reply because the PLRA applies only to plaintiffs who are prisoners at the time of filing suit, a class to which plaintiff does not belong.

medication; and that as a result, she suffered an unnecessarily painful labor and delivery, a delay in the delivery of the placenta, and a seizure. She also alleges that she suffered severe emotional distress, triggered by giving birth to her child in a toilet and believing for an unspecified period that he was dead. It is plaintiff's contention that the foregoing harms were caused by defendants' failure to adequately respond to her repeated, urgent requests for medical help. Suffering of additional pain may constitute substantial harm. See Petzold, 946 F.3d at 249.

As to causation, plaintiff has submitted the testimony of expert labor and delivery nurse Nurse Alysse Reams, who testified that the symptoms plaintiff related to prison staff are symptoms of labor that would warrant contacting a physician for further information, direction, and eventual diagnosis. Further, the Eighth Circuit Court of Appeals observed in a similar case that a layperson can recognize the necessity for a doctor's attention when a pregnant prisoner reports bleeding, that she hurt "down there", and that she was having contractions six minutes apart, even though the nurse she reported to noted that she was unable to feel any contractions. Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997) (citations omitted).

Accordingly, the court finds that plaintiff has put forth sufficient competent evidence to establish that material fact issues are present as to whether she suffered harm caused by defendants' actions, which preclude the grant of summary judgment on plaintiff's § 1983 claim brought in her individual capacity.

**b.  Harm suffered by plaintiff's minor son, LW**

Plaintiff also seeks damages on behalf of her minor son, LW. In moving for summary judgment on this issue, defendants contend that it is undisputed that LW did not suffer any

injuries. Plaintiff responded to defendants' statement of uncontested facts, stating that her son

suffered physical pain when he dropped into the toilet of his mother's cell. Unfortunate though

that event may be, the record reflects that no substantial harm resulted from it, as required to

recover under § 1983. Petzold v. Rostollan, 946 F.3d 242, 249. To the contrary, the record

reflects that LW did very well in the NICU considering his premature birth, and was discharged

to his father's care on day 14 of life. In addition, plaintiff testified as follows:

> Q: So, one of the things I need to ask you is you sued on behalf of your son,
> [LW].
> Can you tell us today what [LW]'s damages were?
> ....
>
> THE WITNESS: I mean, physical damages, as of right now, we're not aware of
> anything. However, -- yeah, we're not aware of anything right now.
>
> Q:  Are you aware of any type of damages [LW] has?
>
> A:  No.

Depo. of Tiffini Woodward, Rec. Doc. 144-3, p. 201:2-16.  On this record, the court finds that

plaintiff cannot prevail on a § 1983 claim on behalf of her son.

**C.  Intentional Infliction of Emotional Distress Claim**

Defendants have moved for summary judgment on plaintiff's state law intentional

infliction of emotional distress claim, arguing that she cannot prove the requisite intent, or that

she suffered severe enough distress to establish the claim.

To recover for intentional infliction of emotional distress in Louisiana, a plaintiff must

establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional

distress suffered by the plaintiff was severe; and, (3) that the defendant desired to inflict severe

emotional distress or knew that severe emotional distress would be substantially certain to result

from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). Under Louisiana

law, "extreme and outrageous conduct" is conduct that is " 'so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in a civilized community.' " Rice v. Reliaster Life Ins. Co., 770

F.3d 1122, 1137 (5th Cir. 2014) (quoting White v. Monsanto, 585 So. 2d at 1209 (La. 1991)).

The distress suffered must also "be such that no reasonable person could be expected to endure

it. Liability arises only where the mental suffering or anguish is extreme." White, 585 So. 2d at

1210 (citing Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 570 (La.1990). In Lejeune v.

Rayne Branch Hospital, the court noted that serious emotional distress "goes well beyond simple

mental pain and anguish." 556 So. 2d at 570, "A non-exhaustive list of examples of serious

emotional distress includes neuroses, psychoses, chronic depression, phobia and shock." Id.

 Defendants argue that because plaintiff cannot prove deliberate indifference, she cannot

prove an intentional act as required by the third prong above. With respect to Nurses Gabriel and

Armant, the evidence establishes that they did not act with deliberate indifference; thus, they are

entitled to the dismissal of the intentional infliction of emotional distress claims against them.

However, with respect to the other defendants, the court has found that fact issues exist on the

question of deliberate indifference. Accordingly, Becnel and CorrectHealth are not entitled to

summary judgment based on this argument.

 Defendants further argue that plaintiff has not suffered severe enough distress to prevail

on a claim for intentional infliction of emotional distress. Defendants contend that this is borne

out by the fact that plaintiff has never sought mental health treatment in connection with the incident.

Plaintiff has alleged that she experienced severe emotional distress by being forced to deliver her baby alone in a prison cell toilet after requesting and being denied medical assistance while in labor. After delivery, her son remained in the toilet for some period of time, during which plaintiff assumed he was dead. She has testified that she has persistent nightmares and remains afraid for her son to go in the water or take a shower. While she has not sought formal medical or mental health treatment for her trauma, she has addressed it in group therapy sessions. The court finds that plaintiff has established that an issue of fact exists as to whether she experienced severe emotional distress. Accordingly, defendants' motion for summary judgment for intentional infliction of emotional distress fails against plaintiff in her individual capacity except with respect to Nurses Gabriel and Armant.

Plaintiff has made no argument nor pointed to any evidence to support an intentional infliction of emotion distress claim on behalf of her son. Thus, defendants are entitled to summary judgment on any claims for intentional infliction of emotional distress brought on behalf of her minor son.

20

### D.  Punitive Damages Claims

Plaintiff seeks punitive damages from defendants. Defendants seek summary judgment dismissing the punitive damages claims, arguing that punitive damages are not recoverable against any of the defendants in this case. With respect to the state law claims, defendants argue punitive damages are not authorized by statute. With respect to the 1983 claims, the individual defendants argue that Woodward has not shown any evidence of malicious intent, which is required for a punitive damages award. CorrectHealth argues that the prohibition against assessing punitive damages against a municipality exempts it from punitive damages because it is essentially acting as a municipality.

#### 1. State Law claims

"Under Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute." Int'l Harvester Credit Corp. v. Seale, 518 So. 2d 1039, 1041 (La. 1988). Plaintiff does not identify a statute that authorizes punitive damages for her state law claims. Thus, plaintiff is barred from recovering punitive damages on her state law claims.

#### 2. Individual defendants

"[A] jury may . . . assess punitive damages . . . under § 1983 when the defendant's conduct is . . . motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "Reckless indifference . . . [is] 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" Heaney v. Roberts, 846 F.3d 795, 803 (5th Cir. 2017) (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

21

The court has dismissed Nurses Gabriel and Armant, therefore, any claims for punitive damages are solely directed to Nurse Becnel. The court has previously found that a jury could conclude that Becnel responded with deliberate indifference to Woodward's serious medical needs. Likewise, a jury could conclude that Becnel responded with the reckless or callous indifference required to recover punitive damages. Accordingly, the motion for summary judgment dismissing the punitive damages claim as to Nurse Becnel is denied.        ***3.***

***CorrectHealth***

"[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). However, "the Fifth Circuit has not directly addressed whether punitive damages can be awarded against a private company working under contract with a local political subdivision to provide correction services." Moore v. LaSalle Corr., Inc., 429 F. Supp. 3d 285, 287 (W.D. La. 2019) (holding punitive damages not allowed against private prison contractor) appeal docketed Moore v. LaSalle Corrections, Inc., No. 20-30739 (5th Cir. Nov. 30, 2020). In Moore, the court analyzed the Supreme Court's decision in City of Newport and applied the reasoning to a private prison contractor. Id. at 289. The Moore court found, as a matter of first impression in this circuit, that a prison contractor was exempt from punitive damages because such an award would necessarily "harm the public fisc" by increasing the cost of maintaining the contract with the contractor. Id. The court further reasoned that a company cannot have the state of mind for the required scienter. Id. The court also found that "[a]llowing punitive damages against [the contractor] would be to hold it liable for the actions of its employees (i.e. under a vicarious liability theory), despite the clear

22

jurisprudence against the application of vicarious liability against a private prison management company." Id.

In contrast, multiple courts around the country have held that private prison contractors are not immune from punitive damages. See e.g., Beard v. Wexford Health Sources, Inc., 900 F.3d 951 (7th Cir. 2018); Sanders v. Glanz, 138 F. Supp.3d 1248 (N.D. Okla. 2015); Lawes v. Las Vegas Metro. Police Dept., 2013 WL 3433150 (D. Nev. 2013). See also, Campbell v. Pennsylvania Sch. Boards Ass'n, 2018 WL 3092292 (E.D. Pa. 2018) (holding that punitive damages could be claimed against the Pennsylvania School Board Association as a "private entity held to be a state actor for purposes of a claim under §1983."). Similarly, commentators have concluded that

> municipal immunity from punitive damages does not extend to private organizations that contract with the municipality to perform a function previously performed by the municipality. The policy reasons behind prohibiting recovery of punitive damages against municipalities are not applicable to private parties merely because of their contract relationship with the municipality.

JOHN KIRCHER & CHRISTINE WISEMAN, PUNITIVE DAMAGES: LAW AND PRAC. § 15:23 (2d ed. 2020).

Moore presents the precise question the court is confronted with in this motion, which is unresolved in this circuit, and currently before the Fifth Circuit Court of Appeals. It has been docketed and briefing is underway. The trial of the instant matter is set for August 2, 2021. Accordingly, the court pretermits consideration of this issue until after the appellate court has issued its decision.

### E.  Injunctive and Declaratory Relief Claims

Defendants also seek summary judgment on plaintiff's claims for injunctive and declaratory relief. The sole allegation in the revised first amended complaint concerning injunctive and declaratory relief states: "Plaintiffs pray that . . . this Court . . . [a]ward Injunctive and Declaratory Relief against the Defendants' in their official capacities." In addition to the fact that plaintiff acknowledges that injunctive relief is inappropriate because she is no longer incarcerated, the only defendants sued in their official capacities are Sheriff Lopinto and Sheriff Normand. No injunctive or declaratory relief claims have been brought against movants herein; accordingly, this portion of the motion is moot.

## III.  CONCLUSION

The summary judgment evidence before the court establishes that neither Nurse Armant nor Nurse Gabriel acted with deliberate indifference. The summary judgment evidence establishes that there are fact issues as to whether Nurse Becnel acted with deliberate indifference and callous indifference to the fact that Woodward was in labor, and whether Becnel's actions were the result of a CorrectHealth policy or practice of not training employees on the detection of labor, after it adopted a policy of transferring out pregnant patients upon onset of labor. The summary judgment evidence establishes that plaintiff's minor son, LW, did not suffer the substantial harm required to establish a § 1983 claim. The summary judgment evidence establishes that plaintiff cannot prove a claim for intentional infliction of emotional distress on behalf of her minor son, LW. The summary judgment evidence put forth in this case

24

establishes that plaintiff  is not entitled to punitive damages for her state law claims. Accordingly,

IT IS HEREBY ORDERED that the **Motion for Summary Judgment** (Rec. Doc. 144) filed by defendants, CorrectHealth Jefferson, LLC, Ironshore Specialty Insurance Company, Michelle Becnel, Vonzelle Gabriel, and Margaret Armant, is **GRANTED** in part. Plaintiff's claims brought on behalf of her minor child, LW, are **DISMISSED**, and plaintiff's claims for injunctive relief and declaratory relief are **DISMISSED** as CorrectHealth, Ironshore Specialty Insurance Company, Michelle Becnel, Vonzelle Gabriel, and Margaret Armant. In all other respects, the motion is **DENIED**;

IT IS FURTHER ORDERED that the **Motion for Summary Judgment Regarding Deliberate Indifference** (Rec. Doc. 147) filed by defendants is **GRANTED** in part, and the claims against Vonzelle Gabriel and Margaret Armant are **DISMISSED**. In all other respects, the motion is **DENIED**;

IT IS FURTHER ORDERED that the **Motion for Summary Judgment Regarding Punitive Damages** (Rec. Doc. 145) filed by defendants is **GRANTED** in part, and plaintiff's claim for punitive damages for intentional infliction of emotional distress is **DISMISSED**. The motion is **DENIED** as to Nurse Becnel. With respect to CorrectHealth, the motion is **PRETERMITTED** pending the decision of the Fifth Circuit Court of Appeals in <u>Moore v. LaSalle Corr., Inc.</u>, No. 20-30739 (5th Cir. Nov. 30, 2020);

IT IS FURTHER ORDERED that the **Motion for Partial Summary Judgment on Liability** (Rec. Doc. 148) filed by plaintiff is **DENIED**.

New Orleans, Louisiana, this __17th__ day of May, 2021.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**